**Sherman PROSHEE**

v.

**TIDEWATER MARINE, INC.**

**Civil Action No. 94–4164.**

United States District Court,
E.D. Louisiana.

June 18, 1996.

John T. Bennett, Anthony Francis Salario, John T. Bennett Law Offices, Marksville, LA, Edward Alan Kaplan, Alexandria, LA, for plaintiff.

John J. Cooper, Gary L. Laborde, Breazeale, Sachse & Wilson, New Orleans, LA, for defendant.

## ORDER

PORTEOUS, District Judge.

Before the Court is defendant's Motion for Sanctions against plaintiff's attorney, Mr. Edward A. Kaplan. Oral arguments were heard on the 13th day of March 1996 and the motion was taken under submission by the Court on the same date. After considering the memoranda filed by counsel, the Court's record, and the applicable law, defendant's Motion for Sanctions is, hereby, **GRANTED.** Accordingly, $5,000.00 is to be paid to defendant, Tidewater Marine, Inc., through their counsel of record, Mr. John J. Cooper, by plaintiff's attorney, Mr. Edward A. Kaplan. Mr. Kaplan has thirty (30) days from the undersigned date to make this payment.

## I.) FACTUAL BACKGROUND

Plaintiff filed his seamen complaint on the 30th of December 1994 alleging injuries to his shoulder as a result of negligence on the

part of defendant and demanded maintenance and cure benefits. On the 1st of January 1995, defendant began paying all maintenance and cure benefits from the date of the alleged injury on the 14th day of December 1994.

Plaintiff began treatment under Dr. Stuart Phillips on the 26th of January 1995. After the initial examination, Dr. Phillips prescribed physical therapy as well as other treatment. As early as the 27th of February 1995, Tidewater authorized the physical therapy at Louisiana Physical Therapy Center, Inc., as prescribed, three times a day for a six week duration. Additional therapy was authorized in April and was paid for by the defendant.

Plaintiff notified defendant, by letter dated the 26th of April 1995, that Dr. Phillips recommended arthroscopic examination of the plaintiff's shoulder. Defendant requested the cost, nature, and anticipated timing of the recommended surgery. Throughout this period, defendant continued to pay maintenance and cure.

Because Dr. Phillips' recommended surgery, defendant scheduled a routine Independent Medical Examination ("IME") for plaintiff. By letter dated the 23rd of May 1995, plaintiff was timely notified of the scheduled IME with Dr. Lee Moss for the 8th of June 1995, purposely set prior to any planned surgical intervention by plaintiff's treating physician. Plaintiff was again notified by letter dated the 24th of May 1995 that the IME was scheduled for the 8th of June 1995 with Dr. Moss in New Orleans.[1] On May 25, 1995, plaintiff acknowledged notice of the IME by responding and indicating that Mr. Proshee should be reimbursed for reasonable travel arrangements, including mileage expenses, for his IME appointment.[2]

On May 25, 1995, a preliminary phone conference was held with plaintiff's and defendant's counsel by this Court's staff at which time the pre-trial conference, trial dates and discovery deadlines were assigned. During the course of the conference, plaintiff's attorney was again notified of the im-

pending IME and the importance of the plaintiff's attending before any surgical intervention by his treating physician.

On the 7th of June 1995 at approximately 5:15 p.m., plaintiff's counsel's office notified defendant's counsel's office that Mr. Proshee was unable to attend the scheduled IME, alleging that plaintiff was "too ill" to travel. The next day, defendant's counsel immediately rescheduled the IME with Dr. Lee Moss's office for the 29th of June 1995, at 10:30 a.m. Defendant's office again notified plaintiff's counsel on the 12th of June 1995, via facsimile letter, of the rescheduled IME and the necessity of plaintiff's attendance.[3] On the 16th of June 1995, five days after cancellation of the scheduled IME, and without knowledge or consent from defendant, plaintiff's physician, Dr. Stuart Phillips, performed arthroscopic surgery on Mr. Proshee.

On or before the 20th of June 1995, defendant learned of plaintiff's rumored surgery by Dr. Phillips. Defendant immediately contacted plaintiff's counsel and requested information on plaintiff's medical status. This information was transferred to defendant's counsel via receipt of Dr. Phillips's report which confirmed that plaintiff did, in fact, undergo surgery on his shoulder on the 16th of June 1995.

On the 22nd of June 1995, plaintiff's counsel made demand for reimbursement and payment of all of plaintiff's medical expenses, including surgery. Thereafter, plaintiff appeared at Dr. Moss's office, one hour late, on the 29th of June 1995, for his scheduled IME. While Dr. Moss was unable to see him, one of Dr. Moss's associates attempted the examination of Mr. Proshee. However, this examination was only two weeks post-surgery, and was for the most part incomplete. If defense counsel had known prior to the IME that Mr. Proshee had already undergone surgery, the IME would have been cancelled because at that point it was an exercise in futility.

---

1. See Defendant's Exhibits A, B & C.

2. See Defendant's Exhibit E.

3. See Defendant's Exhibit H.

## II.) FINDINGS AND CONCLUSIONS:

■ Defendant argues that they have been seriously prejudiced in this matter by plaintiff's unilateral decision to undergo surgery prior to the scheduled IME. Although a shipowner owes maintenance and cure to a seaman who becomes ill or injured while in the service of his ship, the shipowner need not immediately commence payments. The vessel owner is entitled to investigate and require corroboration of the claim. *Morales v. Garijak, Inc.,* 829 F.2d 1355, 1358 (5th Cir.1987), citing *McWilliams v. Texaco, Inc.,* 781 F.2d 514, 518–520 (5th Cir.1986).

In this case, Tidewater began payment of maintenance and cure very shortly after the accident, and sought to require corroboration of plaintiff's purported need vel non for arthroscopic surgery through an IME. In addition to determining whether surgery was appropriate, the IME would also have provided Tidewater with verification by its own physician that the surgery was related to the alleged injury in suit. As it turns out, plaintiff's own physician, Dr. Manale, determined during arthroscopic surgery that at least a part of plaintiff's shoulder problem was an "unexpected pathologic lesion on the humeral head ..."[4] Thus, by going ahead with elective surgery before defendant's scheduled IME, plaintiff irreparably prejudiced Tidewater's ability to determine whether the surgery was required for plaintiff's alleged injury aboard the vessel, rather than for his "pathologic lesion." Tidewater has thus been precluded from assessing Mr. Proshee's injuries from the accident in suit. It appears that plaintiff's attorney willfully ignored repeated requests and notices from defendant for the scheduled IME, with full knowledge that plaintiff intended to undergo surgery recommended by Dr. Phillips and performed by his associate, Dr. Manale.

During oral arguments, the Court questioned Mr. Edward Kaplan concerning the foregoing events to determine which party, client or attorney, was responsible for the departure from professional responsibility. Mr. Kaplan informed the Court that his client, Mr. Proshee, had no part in the premature surgery and that he, Mr. Kaplan himself, was responsible for this mixup. Further, Mr. Kaplan added that he was simply unaware of when the IME was scheduled and that this incident was just a simple misunderstanding. This Court disagrees. In a letter dated the 25th of May 1995, Mr. Kaplan addresses counsel for defendants by beginning the letter, "In reference to the IME you have scheduled for Mr. Proshee ..."[5] The letter goes on to request travel expenses for plaintiff when he attends the IME. This Court will not allow an attorney to represent that he had not received letters and did not know about the IME when this representation is contradicted by his own signed letter sent to opposing counsel.

■ As mentioned in *Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), federal courts have broad discretion to impose sanctions as follows:

> "[using the] inherent power to manage their own proceedings and to control the conduct of those who appear before them ... punish conduct which abuses the judicial process ... sanctions may range from dismissal of a lawsuit to assessment of attorney's fees ... [for example, when a] party practices a fraud upon the court ... or delays or disrupts the litigation ..." *Chambers,* at p. 33, 111 S.Ct. at p. 2126.

There is nothing included in 28 U.S.C. § 1927, F.R.C.P. 11, or any other F.R.C.P. that warrants a decision that, taken together or alone, the other mechanisms displace the Court's inherent power to impose sanctions for the above conduct. *Chambers,* at p. 33, 111 S.Ct. at p. 2126. The standard used is abuse of discretion and it is adhered to when reasonable persons could differ on the action taken by the trial court. *Lorentzen v. Anderson Pest Control,* 64 F.3d 327, 330 (7th Cir.1995). After an extensive search, the Court has concluded that the instant issue is res nova in the Fifth Circuit Court of Appeals as well as in our sister circuits. Nevertheless, the Court feels strongly that this situation must be addressed and discouraged.

---

4. See Defendant's Exhibit K.

5. See Defendant's Exhibit E.

■ It is the opinion of the Court that Mr. Kaplan has caused numerous problems both for defense counsel as well as his own client. The lack of an IME has postponed all future needed surgeries and has also created causation problems for his client. Further, this incident has wasted defendant's counsel's time, as well as the Court's, in order to bring this matter to the Court's attention.

Accordingly,

**IT IS ORDERED** that Mr. Edward Kaplan pay $5,000.00 to defendant, Tidewater Marine, Inc., for attorneys' fees and expenses, through their counsel of record, Mr. John J. Cooper, within thirty (30) days.